Samuel V. Eichner
SDNY Bar No. SE1967
sam.eichner@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street New York, NY 10019
Telephone: +1 (212) 858-1000
Facsimile: +1 (212) 858-1500

Carolyn Toto
carolyn.toto@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, 36th Floor
Telephone: +1 (213) 488-7238
Facsimile: +1 (213) 629-1033

*Attorneys for Petitioner Olivet University*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OLIVET UNIVERSITY,<br><br>                              Petitioner,<br><br>        vs.<br><br>OLIVET COLLEGE n/k/a<br>THE UNIVERSITY OF OLIVET,<br><br>                              Respondent. | Civil Action No.<br><br><br>**PETITION** |

Petitioner Olivet University ("Petitioner"), for its complaint and petition against

Respondent Olivet College n/k/a The University of Olivet ("Respondent") states as follows:

### INTRODUCTION

1.      This Petition arises from a Settlement and Co-Existence Agreement dated May

3, 2023 affecting the parties' OLIVET trademarks ("2023 Agreement").  *See* Gebhardt

Decl. ¶ 18.[1]

2.      The 2023 Agreement includes a binding arbitration clause, requiring that "any claim, controversy, or dispute arising out of or related to the parties' respective trademarks, or the interpretation, performance, or breach" of the 2023 Agreement be resolved through arbitration in New York, New York.  This agreement also includes a provision providing that the agreement is governed by New York law.

3.      Petitioner now seeks an order for a temporary restraining order and preliminary injunctive relief to maintain the *status quo* pending the outcome of arbitration of Petitioner's claims of trademark infringement, breach of contract, and fraud in accordance with the parties' agreement to arbitrate such claims.  Petitioner seeks this injunctive relief to stop Respondent's infringing rebrand to "The University of Olivet," which has already caused and will continue to cause actual consumer confusion, harming Petitioner's valuable rights in its OLIVET UNIVERSITY trademark, and depriving Petitioner of the benefits to which it is entitled under the parties' 2023 Agreement.

## JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction over the subject matter of this action pursuant to 9 U.S.C. § 4, 15 U.S.C. § 1121 and 28 U.S.C. § 1331, and this Court has supplemental jurisdiction over the state law claims pled herein pursuant to 28 U.S.C. § 1367.

5.      This Court also has diversity jurisdiction over the claims in this action pursuant to

---

[1]  The facts are set forth in the Declaration of Matthias Gebhardt in Support of Petitioner's Request for a Temporary Restraining Order and Preliminary Injunction, dated September 6, 2023 ("Gebhardt Decl."), the Declaration of Samuel V. Eichner in Support of Petitioner's Request for a Temporary Restraining Order and Preliminary Injunction, dated September 6, 2023 ("Eichner Decl."), and the Declaration of Victoria Tufo in Support of Petitioner's Request for a Temporary Restraining Order and Preliminary Injunction, dated September 6, 2023 ("Tufo Decl.").

28 U.S.C. § 1332, as Plaintiff is a university organized in California and Defendant is a college organized in Michigan, such that the parties are completely diverse, and the amount in controversy exceeds $75,000.

6.      This Court has personal jurisdiction over Respondent at least because Respondent entered an ongoing contractual relationship with Petitioner under an agreement that identifies this District for resolution of disputes, and because Respondent's breaches of that agreement, and tortious conduct have harmed Petitioner in this District.

7.      Venue in this district is proper pursuant to 28 U.S.C. § 1391 because the 2023 Agreement provides that any arbitration shall take place in New York, New York and this Petition has been filed in aid of an arbitration proceeding that has already commenced in New York, New York.

## THE PARTIES

8.      Petitioner is a California non-profit corporation with a principal place of business at 36401 Tripp Flats Rd, Anza, California 92539.  Plaintiff operates an institution of biblical higher education that is dedicated to training Christian ministry-bound men and women as biblical scholars and leaders.  Petitioner has used the OLIVET UNIVERSITY name and trademark for educational services since at least 2004.  *See* Gebhardt Decl. ¶ 5.

9.      Respondent is a Michigan corporation with an address at 320 S. Main Street, Olivet, Michigan 49076. Defendant operates a college, located in the town of Olivet, Michigan, which provides undergraduate and graduate-level education.  Respondent claims to have used the OLIVET COLLEGE mark for education services since 1844.  *See id.* ¶ 11.

## THE PARTIES' 2023 TRADEMARK CO-EXISTENCE AGREEMENT AND RESPONDENT'S INFRINGEMENT OF PETITIONER'S TRADEMARK RIGHTS

10.      Petitioner owns incontestable U.S. trademark registration no. 4926123 for the

OLIVET UNIVERSITY trademark for educational services.  Petitioner's OLIVET UNIVERSITY trademark is strong and entitled to a presumption of validity and enforceability. *See* Gebhardt Decl. ¶¶ 6-8; *see* 15 U.S.C. §§ 1065, 1115(b); *Park N Fly, Inc. v. Dollar Park & Fly, Inc*., 469 U.S. 189, 205 (1985).

11.    Respondent purports to own the OLIVET COLLEGE trademark for educational services based on first use of that name and mark in the year 1844.  *See* Gebhardt Decl. ¶ 11.

12.    On April 29, 2015, after approximately 11 years of peaceful coexistence between Petitioner's OLIVET UNIVERSITY mark and Respondent's OLIVET COLLEGE mark, Respondent sent Petitioner a trademark demand letter, alleging trademark rights in the OLIVET COLLEGE mark based on a date of first use in the year 1844.  *See id*.

13.    Respondent's April 29, 2015 letter stated that "[w]hile [Defendant] could object to your use of Olivet University as confusingly similar to their long used and registered mark, they have not done so, **believing the use of University will help distinguish the institutions in the minds of the public.**"  *Id*. (quoting April 29, 2015 Letter) (emphasis added).  The letter also expressed concern with OU's use of OLIVET immediately followed by COLLEGE for names of schools housed within Olivet University, and asked Petitioner to discontinue "the infringing coupling of 'Olivet' with 'College'" in connection with Respondent's educational services.  *Id*.

14.    On May 20, 2015, the parties entered a written agreement ("2015 Agreement") to cooperate to avoid confusion between their respective OLIVET UNIVERSITY and OLIVET COLLEGE marks.  *Id*. at ¶ 12.  The 2015 Agreement provides a framework for the parties to avoid consumer confusion, namely, by acknowledging Petitioner's rights in OLIVET UNIVERSITY (and barring its use of OLIVET COLLEGE), and by acknowledging Respondents rights in OLIVET COLLEGE (and barring its use of OLIVET UNIVERSITY).  *See id*., Ex. 3, ¶¶

1-2.  The parties also agreed, *inter alia*, not to challenge their respective rights, applications, or registrations for their respective OLIVET marks.  *See id*., Ex. 3, ¶ 1.

15.     After the 2015 Agreement was entered into, Petitioner complied with its terms by renaming all schools housed within Olivet University from names that used the "Olivet College" phrase to names that do not use such identical phrase.  *Id*. at ¶ 13.

16.     On March 25, 2021, Respondent's counsel sent Petitioner a one-page letter baldly claiming that the May 20, 2015 Agreement was "void" because Petitioner had not complied.  *Id*. at ¶ 14, Ex. 4.  On March 26, 2021, Respondent breached the May 20, 2015 Agreement by petitioning to cancel Petitioner's U.S. trademark registration no. 4926123 ("OU Registration") for the OLIVET UNIVERSITY mark, which commenced a proceeding captioned *Olivet College v. Olivet University*, TTAB Proceeding No. 92076800 before the U.S. Trademark Trial and Appeal Board (the "TTAB Proceeding").  *See* Gebhardt Decl. at ¶ 15, Ex. 5.

17.     Respondent's petition to cancel the OU Registration in the TTAB Proceeding breached the parties' 2015 Agreement, which prohibited Respondent's petition to cancel Petitioner's OLIVET UNIVERSITY registration.  *See* Gebhardt Decl. at ¶ 12 Ex. 3, ¶ 1 ("OC…agrees not to…petition to cancel…any current registration…of marks consisting of or comprising the term 'Olivet University.'")

18.     Respondent's petition to cancel the OU Registration in the TTAB Proceeding alleged that there existed a likelihood of confusion between OC's OLIVET COLLEGE mark for educational services and Claimant's OLIVET UNIVERSITY mark for educational services due to the confusing similarity between those two marks.  Specifically, Respondent alleged as follows:

> The OLIVET UNIVERSITY mark is confusingly similar, in appearance, sound, meaning, and commercial impression to the

> OLIVET COLLEGE mark. The continued registration and use of
> the OLIVET UNIVERSITY mark by Respondent in association
> with the recited services is likely to cause confusion as to the source
> or origin of Respondent's services and is likely to mislead
> consumers, all to the Petitioner's damage.

*See* Gebhardt Decl. at ¶ 15, Ex. 5, ¶ 8.

19.     During the settlement negotiations that followed, Respondent refused to agree to

an arbitration provision or dispute resolution procedure for future disputes; for Petitioner, such a

provision was non-negotiable, as Respondent's March 25, 2021 letter had claimed that the 2015

Agreement was "void" as a basis to file an action against Petitioner at the TTAB, and Petitioner

sought reasonable terms to deter this type of pretext from happening again, but Respondent

would not agree them.  *Id*. at ¶ 16.

20.     On January 23, 2023, Petitioner filed suit against Respondent, *inter alia*, to

enforce the 2015 Agreement, which commenced an action in the U.S. District Court for the

Central District of California captioned *Olivet University v. Olivet College*, 23-CV-117 ("Civil

Action").  *Id*. at ¶ 17, Ex. 6.

21.     On May 3, 2023, the parties executed the 2023 Agreement.  *Id*. at ¶ 18, Ex. 7.

The 2023 Agreement provides that the parties' "usages of their *respective marks*" can "coexist

without confusion" and that the parties will cooperate in good faith to address any actual

confusion, or disputes or concerns related to their use of OLIVET marks.  *Id*. at ¶ 18, Ex. 7, at 2.

The 2023 Agreement also included a dispute resolution provision.  *Id.* at ¶ 18, Ex. 7, ¶ 12.

Following execution of the 2023 Agreement, the TTAB Proceeding and Civil Action were

dismissed.  *Id*. at ¶ 18.  At no time during the negotiations of the 2023 Agreement did

Respondent refer to THE UNIVERSITY OF OLIVET mark, or its plans to adopt this mark (or

any mark other than OLIVET COLLEGE).  *See id*. at ¶ 19.

22.     On May 23, 2023, less than three weeks after the 2023 Agreement was fully executed, Respondent issued a press release announcing that Respondent was rebranding to THE UNIVERSITY OF OLIVET ("Press Release").  *See* Gebhardt Decl. ¶ 21.  Such press release states that Respondent "unanimously approved [this decision] . . . at its May 19 board meeting." *Id*. at Ex. 8.

23.     On June 6, 2023, Respondent filed federal trademark applications with the U.S. Patent and Trademark Office ("USPTO") for the below rebrand-related marks ("Rebrand Marks") based on a bona fide intent-to-use such marks (details shown below) (*id*. ¶ 22):

- THE UNIVERSITY OF OLIVET (U.S. Trademark Application No. 98029774);

-  (U.S. Trademark Application No. 98029801);

- UOLIVET (U.S. Trademark Application No. 98029781);

-  (U.S. Trademark Application No. 98029798); and

-  (U.S. Trademark Application No. 98029789).

24.     Following the Press Release, many of instances of consumer confusion have arisen as a direct result of Respondent's rebrand from OLIVET COLLEGE to THE UNIVERSITY OF OLIVET and the Rebrand Marks.  *See* Tufo Decl. ¶ 3.

25.     Respondent's THE UNIVERSITY OF OLIVET mark and its Rebrand Marks infringe Petitioner's trademark rights in its OLIVET UNIVERSITY mark.

26.     Respondent's THE UNIVERSITY OF OLIVET mark and its Rebrand Marks infringe Petitioner's trademark rights in OLIVET UNIVERSITY at least because Respondent's THE UNIVERSITY OF OLIVET mark is virtually identical to Petitioner's OLIVET UNIVERSITY mark; the parties' offer overlapping goods and services through overlapping trade

channels to overlapping groups of consumers; there are already many of instances of actual confusion over just 3 months; and Respondent adopted THE UNIVERSITY OF OLIVET and its Rebrand Marks in bad faith.  *See* Memorandum of Law In Support of Petitioner's Request for a Temporary Restraining Order and Preliminary Injunction ("Memo of Law"), at 12-22.

27.     To stop the mounting harm to Petitioner, its valuable trademark rights, and the public, Petitioner initiated the dispute resolution process set forth in the 2023 Agreement, and asked Respondent to pause its rebrand but, as set forth below, Respondent has refused to participate in the dispute resolution process and has further refused to pause its infringing rebrand.

28.     As of Monday, August 21, 2023, classes at Respondent's school are now in session, exposing students, alumni, and the public to Respondent's infringing marks on a regular basis.

29.     With students returning to campus, the confusion that Respondent's rebrand is likely to cause among students, parents, and consumers in general will increase, leading to ongoing and irreparable harm to Petitioner and its valuable trademark rights, as well as harm to the public in view of the public's interest in being free from confusion.

### RESPONDENT'S BREACH OF THE 2023 AGREEMENT

30.     Respondent's adoption and use of THE UNIVERSITY OF OLIVET and the Rebrand Marks breached Paragraph 3 of the parties' 2023 Agreement.  Paragraph 3 requires the parties to cooperate to avoid "confusion or mistake."  *See* Gebhardt Decl. ¶ 18, Ex. 7, ¶ 3. Respondent's adoption and use of these marks does the opposite; it not only fails to avoid confusion, but actively encourages it.  *See* Tufo Decl. ¶ 3.  Respondent knew that its rebrand would cause confusion but proceeded with that rebrand anyway.  *See* Gebhardt Decl. ¶ 11 (discussing letter in which Respondent's counsel admits that Petitioner's "infringing coupling" of "Olivet" with "College" would create confusion with Respondent, which means that Respondent's

"infringing coupling" of "Olivet" with "University" must also cause confusion with Petitioner).

31.     Even if Respondent's adoption and use of THE UNIVERSITY OF OLIVET and the Rebrand Marks did not breach the express terms of Paragraph 3, such conduct breached the implied covenant of good faith and fair dealing in the 2023 Agreement.   Such covenant "encompass[es] any promises which a reasonable person in the position of the promisee would be justified in understanding were included."  *Full Circle United, LLC v. Skee-Ball, Inc*., No. 11 CV 5476, 2014 WL 12829195, at *8 (E.D.N.Y. May 13, 2014) (citation omitted).

32.     The purpose of a trademark coexistence agreement is to "fix[] and define[] the existing trademark of each [party] ... [so] that confusion and infringement may be prevented." *Exxon Corp. v. Oxxford Clothes, Inc*., 109 F.3d 1070, 1076 (5th Cir. 1997)) (4th and 5th alterations in original).

33.     Respondent's rebrand to THE UNIVERSITY OF OLIVET violates the covenant of good faith and fair dealing implied into the parties' 2023 Agreement because that trademark co-existence agreement is intended to avoid confusion, and Respondent's rebrand creates confusion.

34.     Following Respondent's Press Release and the commencement of its infringing use of THE UNIVERSITY OF OLIVET and Rebrand Marks, multiple instances of actual confusion have arisen.  *See* Tufo Decl. ¶ 3.  This confirms that Respondent breached Paragraph 3 of the 2023 Agreement or, alternatively, the implied covenant of good faith and fair dealing.

## RESPONDENT'S FRAUDULENT CONCEALMENT OF ITS REBRAND

35.     While Respondent has breached the 2023 Agreement (as set forth above) to the extent it is enforceable, in the alternative, Respondent's fraudulent concealment of its rebrand and impending adoption of THE UNIVERSITY OF OLIVET and Rebrand Marks from Petitioner when negotiating the 2023 Agreement entitles Petitioner to rescission of the 2023 Agreement.

36.     Neither Respondent nor its counsel disclosed Respondent's plans to rebrand to THE UNIVERSITY OF OLIVET (nor any other mark) during negotiation of the 2023 Agreement.  *See* Gebhardt Decl. ¶ 19.

37.     Respondent intended to rebrand before it signed the 2023 Agreement.  The mere 13 business days between Respondent's execution of the 2023 Agreement and its May 19 rebrand decision (*see* Gebhardt Decl. ¶ 21, Ex. 8, referencing a May 19 board of directors vote), together with the time and consideration necessarily involved in renaming and rebranding a 179-year-old institution, confirms that Respondent planned the rebrand before the 2023 Agreement was signed.

38.     Respondent's website confirms that Respondent conducted "research" before making the decision to rebrand to THE UNIVERSITY OF OLIVET, which also could not have been implemented, completed, and reviewed, all within 13 business days.  *See* Tufo Decl. ¶ 9.

39.     In fact, Respondent now admits that it has been planning its "Vision" for "The University of Olivet 2030" since "[b]efore the pandemic" began.  *Id*. ¶ 10.

40.     During negotiation of the 2023 Agreement, a trademark co-existence agreement, Respondent had a duty to disclose its rebranding plans to Petitioner under New York law because Respondent had "superior knowledge of essential facts."  *Sea Tow Servs. Int'l, Inc. v. Tampa Bay Marine Recovery, Inc*., 632 F. Supp. 3d 91, 106 (E.D.N.Y. 2022) (citation omitted).  Respondent's rebrand was an "essential fact" because the 2023 Agreement—a trademark coexistence agreement—is meant to *prevent* confusion, *see Exxon Corp.*, 109 F.3d at 1076, and Respondent knew the "infringing coupling" of "Olivet" and "College" would harm Respondent's trademark rights and create confusion.  *See* Gebhardt Decl. ¶ 11; *see supra* ¶ 30.

41.     Further, Paragraph 2 of the 2023 Agreement states that Respondent "will not use or apply for registration of any service mark, trademark and/or trade name consisting of or

incorporating… OLIVET immediately followed by designations and/or abbreviations for UNIVERSITY, e.g., 'U' or 'Univ.'" This language was proposed by Petitioner due to its obvious concerns with Respondent's adoption of confusingly similar marks that contained both OLIVET and UNIVERSITY. Even so, Respondent failed to disclose its impending rebrand to a mark that would incorporate UNIVERSITY, i.e., THE UNIVERSITY OF OLIVET.

42.     Respondent hid these facts from Petitioner to fraudulently induce Petitioner to withdraw the Civil Action and agree to the limitations in the 2023 Agreement. Had Petitioner known the truth, it never would have signed the 2023 Agreement. *See* Gebhardt Decl. ¶ 20.

43.     Accordingly, Petitioner is entitled to rescission of the 2023 Agreement.

44.     Though Petitioner argues it is entitled to rescission of the 2023 Agreement due at least to Petitioner's fraudulent concealment, this has no bearing on the arbitrability of disputes under the 2023 Agreement. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448 (2006) (holding that an arbitration agreement is enforceable even if the arbitrator later finds the contract to be void).

**ARBITRATION PROVISION IN THE 2023 AGREEMENT
AND RESPONDENT'S REFUSAL TO ARBITRATE OR STOP THE INFRINGEMENT**

45.     The 2023 Agreement contains the following provisions with respect to the arbitration of disputes between the Parties:

> (a) In an effort to resolve informally and amicably any claim, controversy, or dispute arising out of or related to the parties' respective trademarks, or the interpretation, performance, or breach of this Agreement, including any dispute regarding its existence, termination, validity, applicability, and/or scope (individually and collectively referred to hereinafter as a "Dispute") without resorting to arbitration, each Party will notify the other Party in writing regarding any alleged Dispute that requires resolution. Any such notice must set forth in detail the nature of the Dispute, the amount of damages involved, if any, and the remedy sought. Within five (5) business days, each Party will designate a management-level employee and inform the other Party of the designated representative who will investigate, discuss, and cooperatively seek to resolve the

Dispute between them, including the exchange of reasonable and relevant information and documents. If the designated representatives are unable to settle the matter within thirty (30) business days after the date of the initial notice letter, the matter will be escalated to the Parties' respective officer-level executives for consideration and further discussions. If a mutually acceptable resolution cannot be reached through their efforts within an additional thirty (30) business days (or such longer time period the Parties agree on in writing), then either Party may commence arbitration in accordance with sub-section (b) (directly below this subparagraph). Discussions and correspondence among the representatives for purposes of these settlement negotiations will be treated as confidential information developed for purposes of settlement, exempt from discovery, and inadmissible in the arbitration described below, or in any lawsuit between the Parties. Documents identified in or provided with such communications that are not specially prepared for purposes of the negotiations are not so exempted and may, if otherwise discoverable, be discovered or otherwise admissible, be admitted in evidence, in the arbitration or a lawsuit.

(b) In the event any Dispute is not resolved using the pre-arbitration process described in subsection (a) (immediately above), each Party has the right to have recourse to, and will be bound by, the pre-arbitral referee procedure of the International Chamber of Commerce in accordance with its Rules for a Pre-Arbitral Referee Procedure. All Disputes will be finally resolved under the Rules of Arbitration of the International Chamber of Commerce (the "Rules") by three arbitrators appointed in accordance with said Rules. The place of the pre-arbitral referee procedure and of the arbitration procedure will be New York, New York, United States. The sole arbitrator will be selected by OU with the consent of OC, but such consent shall not be unreasonably withheld. The proceedings before the arbitral tribunal (including with respect to the Pre-Arbitral Referee Procedure) will be governed by the Rules. The rules of law to be applied by the arbitral tribunal to the merits of the dispute will be the rules of law of the State of New York. Any decision or award of the arbitral tribunal is final and binding upon the Parties to the arbitration proceeding. The Parties waive to the extent permitted by applicable law any rights to appeal or to review of such award by any court or tribunal. The Parties agree that the arbitral award may be enforced against the Parties to the arbitration proceeding or their assets wherever they may be found and that a judgment upon the arbitral award may be entered in any court having jurisdiction.

(c) These Dispute Resolution procedures are mandatory. Neither party will initiate any legal proceeding against the other party, including but not limited to a proceeding in federal or state court, or before an administrative tribunal ( e.g., the United States Trademark Trial and Appeal Board ("TTAB") or United States Patent and Trademark Office ("USPTO") unless such proceeding is necessary to enforce the terms of this paragraph 12, a future agreement between the parties arising out

of this paragraph 12, or an arbitral award to one party against the other. If one party initiates a legal proceeding against the other party in a manner that breaches this provision, then the breaching party will be liable for all attorney's fees and costs incurred by the non-breaching party in connection with its defense of such legal proceeding.

Gebhard Decl. Ex. 7.

46.     By letter dated August 2, 2023 ("Notice of Intent"), Petitioner wrote to Dr. Steven Corey, President of Respondent, notifying Respondent of a Dispute under Paragraph 12. Specifically, Petitioner notified Respondent that its THE UNIVERSITY OF OLIVET mark and Rebrand Marks infringed Petitioner's trademark rights and breached the 2023 Agreement, and that Respondent had fraudulently induced Petitioner to sign the 2023 Agreement.  Eichner Decl. ¶ 4, Ex. 1.  Petitioner asked Respondent to pause its rebrand to THE UNIVERSITY OF OLIVET at least during the dispute resolution process, and explained that Petitioner would seek emergency relief from an appropriate tribunal, if necessary.  *Id*. at ¶ 5.

47.     On August 9, 2023, counsel for Respondent replied that Petitioner failed to give proper notice of the basis for the dispute (alleging that Petitioner "cites no facts" supporting fraud or a breach of contract).  *Id*. at ¶ 6.  Respondent also declined to designate a representative as the 2023 Agreement requires, and claimed that Petitioner could not seek interim relief in aid of arbitration in this Court.  *Id*.  On August 14, 2023, counsel for Petitioner replied to counsel for Respondent's August 9, 2023 letter with further support for Petitioner's claims.  *Id*. at ¶ 7, Ex. 3.

48.     On August 16, 2023, counsel for Respondent replied, asserting that Petitioner may only commence arbitration *after* the 60-business-day discussion period set forth in Section 12(a), but refusing to accept the Notice of Intent that would trigger the 60-business-day discussion period. Rather, counsel wrote that "[Respondent] do[es] not agree that OU has provided sufficient notice of the basis for its dispute as required by the agreement[,]" but "in the interest of avoiding a dispute

over procedure" designated the required representative for Respondent.  *Id*. at ¶ 8, Ex. 4.

49.     On August 25, 2023, counsel for Petitioner replied to Respondent via email with several instances of actual confusion, illustrating the ongoing irreparable harm to Petitioner caused by Respondent's infringing rebrand to THE UNIVERSITY OF OLIVET, and again asked Respondent to pause its infringing rebrand.  *Id*. at ¶ 9, Ex. 5.

50.     Respondent did not reply and, to date, has not agreed to stop its infringing use of THE UNIVERSITY OF OLIVET mark or any of its Rebrand Marks.  *Id*. at ¶ 10.

51.     In view of Respondent's refusal to retract its position that Petitioner has not given proper notice, cannot arbitrate any claims before the 60-business-day period has expired, and cannot arbitrate its trademark infringement claims, to protect Petitioner's valuable trademark rights, and to avoid irreparable harm thereto, Petitioner has filed this proceeding to enforce Paragraph 12 of the 2023 Agreement and maintain the *status quo* in aid of arbitration.

52.     On September 5, 2023, Petitioner filed a Request for Arbitration with the International Chamber of Commerce ("ICC") requesting injunctive and compensatory relief in respect of its trademark infringement, breach of contract, and fraud claims, commencing an ICC arbitration proceeding ("Arbitration Proceeding").

53.     Petitioner has filed this Petition in compliance with Paragraph 12(c) of the 2023 Agreement, which permits Petitioner to commence a federal court proceeding to "enforce the terms of [] paragraph 12."  Specifically, Petitioner seeks injunctive relief from this Court to ensure that the arbitral relief to which Petitioner is entitled shall not be "rendered ineffectual" by Respondent's ongoing infringement, which threatens to irreparably harm Petitioner.  *See* N.Y. C.P.L.R. 7502.

54.     Petitioner has suffered and will continue to suffer irreparable harm if Respondent is not preliminarily enjoined from use of infringing marks until Petitioner's claims are arbitrated.

## CLAIMS FOR RELIEF

### COUNT I
### PRELIMINARY INJUNCTIVE RELIEF

55.     Petitioner Olivet University repeats and realleges each and every allegation set forth in the preceding paragraphs of this Petition.

56.     Petitioner Olivet University is likely to succeed on the merits of its claims for trademark infringement, breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud.

57.     If Respondent Olivet College n/k/a The University of Olivet continues to use THE UNIVERSITY OF OLIVET mark, and other marks that refer to that rebranded name, namely, OLIVETU and UO, then Petitioner Olivet University will be immediately and irreparably harmed through damage to goodwill and reputation.

58.     Petitioner Olivet University is entitled to a presumption of irreparable harm. *See* 15 U.S.C. § 1116(a).

59.     Respondent Olivet College n/k/a The University of Olivet has refused to discontinue its use of THE UNIVERSITY OF OLIVET mark, other marks that refer to that rebranded name, e.g., OLIVETU and UO, and marks that contain both UNIVERSITY and OLIVET.

60.     Pursuant to Federal Rule of Civil Procedure ("FRCP") 65, Olivet University is entitled to a preliminary injunction prohibiting Olivet College n/k/a The University of Olivet from using THE UNIVERSITY OF OLIVET mark, other marks that refer to that rebranded name, e.g., OLIVETU and UO, and marks that contain both UNIVERSITY and OLIVET.

61.     Olivet University is also entitled to a preliminary injunction pursuant to FRCP 64, and New York Civil Practice Law & Rules ("N.Y. C.P.L.R.") 7502(c), prohibiting Olivet College

n/k/a The University of Olivet from using THE UNIVERSITY OF OLIVET mark, other marks that refer to that rebranded name, e.g., OLIVETU and UO, and marks that contain both UNIVERSITY and OLIVET, at least because Olivet University is entitled to seek an arbitration award in a proceeding that is pending or will be commenced within New York, and such award to which Olivet University may be entitled may be rendered ineffectual without such provisional relief. *See Espiritu Santo Holdings, LP v. L1bero Partners, LP*, No. 19 CIV. 3930, 2019 WL 2240204, at *16 (S.D.N.Y. May 14, 2019), aff'd, 789 F. App'x 288 (2d Cir. 2020).

**PRAYER FOR RELIEF**

WHEREFORE Petitioner Olivet University demands judgment against Respondent Olivet College n/k/a The University of Olivet, as follows:

(a) preliminarily enjoining and restraining Respondent Olivet College n/k/a The University of Olivet, together with its officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with Respondent Olivet College n/k/a The University of Olivet or any of its officers, agents, servants, employees, or attorneys from using THE UNIVERSITY OF OLIVET; any names or marks that contain both UNIVERSITY and OLIVET; and any names or marks that refer to THE UNIVERSITY OF OLIVET name and mark, including but not limited to OLIVETU and UO, until a final decision is rendered in the Arbitration Proceeding;

(b) ordering Respondent Olivet College n/k/a The University of Olivet to preserve all documents, evidence, and information relevant to the parties' dispute until a final decision is rendered in the Arbitration Proceeding;

(c) granting Petitioner Olivet University its costs and disbursements of this action, including its reasonable attorney's fees; and

(d) awarding such other relief as the Court deems just and proper.

Dated:  New York, New York                 PILLSBURY WINTHROP SHAW PITTMAN
          September 6, 2023                 LLP

                                              By: /s/ Samuel V. Eichner
                                                  Samuel V. Eichner
                                                  SDNY Bar No. SE1967
                                                  sam.eichner@pillsburylaw.com
                                                  PILLSBURY WINTHROP SHAW
                                                  PITTMAN LLP
                                                  31 West 52nd Street New York, NY 10019
                                                  Telephone: +1 (212) 858-1000
                                                  Facsimile: + 1 (212) 858-1500

                                                  Carolyn Toto
                                                  carolyn.toto@pillsburylaw.com
                                                  PILLSBURY WINTHROP SHAW
                                                  PITTMAN LLP
                                                  725 South Figueroa Street, 36th Floor
                                                  Telephone: +1 (213) 488-7238
                                                  Facsimile: + 1 (213) 629-1033

                                                  *Attorneys for Petitioner*
                                                  *Olivet University*